## CONTRIBUTORY AND CONTINUING NEGLIGENCE.

[Circuit Court of Lucas County.]

THE LAKE SHORE & MICHIGAN SOUTHERN RAILWAY COMPANY v. WILLIAM CALLAHAN.

Decided, June 20, 1903.

*Negligence—On the Part of a Section Hand—Injured by a Backing Locomotive—Contributory Negligence and Continuing Negligence—Answers to Interrogatories Inconsistent With Verdict.*

1. Where a railroad section hand, in obedience to a direction by his foreman, starts to walk along the track with his back to a locomotive two or three hundred feet away, but without observing whether the engine is backing toward him or standing still, and walks along the track for seventy-five feet without paying any further regard to the engine, which is in fact backing toward him and is struck by it and injured, he is guilty of contributory negligence.

2. In a case where the negligence of the one injured is concurrent and continuing to the moment of the injury, the doctrine of the "last chance" does not apply, and he can not recover notwithstanding there may have been negligence upon the part of his foreman or those upon the engine in failing to warn, or use other possible means to save him from his peril.

HULL, J.; PARKER, J., and HAYNES, J., concur.

This proceeding in error was brought to reverse the judgment of the court of common pleas. The defendant in error, who was the plaintiff below, brought his action against the railway company to recover damages for personal injuries, which he claims he sustained on the 21st day of January, 1901, on account of and through the negligence of the railway company. He was awarded a verdict of $1,500 by the general verdict of the jury; and there were special findings of the jury made in answer to interrogatories at the request of both plaintiff and defendant below.

A motion was made by the railway company after the verdict for a judgment in its favor, notwithstanding the general verdict against it. The motion was overruled by the court below and judgment entered against the railway company for the

amount of the verdict, $1,500; and it is to reverse this judgment that the petition in error was filed in this court.

It is claimed that the plaintiff in error is entitled to a judgment in its favor in this court upon the special finding of the jury, as well as a reversal of the judgment of the court below. And the only point urged here by the plaintiff in error is this one—that upon the special findings of the jury it was entitled to a judgment, notwithstanding the general verdict, and that it should have a judgment entered in its favor here.

The plaintiff, and when I say plaintiff, I mean the plaintiff below, William Callahan, was a section man in the employ of the railway company on the day of his injury, and was working under the direction of one John Rable, who was acting as foreman, nearly opposite the union depot in the city of Toledo and almost directly opposite the dining-room which is connected with the union station. Callahan and the other men in his gang were at work repairing the track at this point, a portion of the east-bound main track, which lies outside of and to the south of the sheds under which the passenger trains ordinarily run. They were at work there repairing the track, and in doing their work it became necessary to have a wrench and bolt which were lying between the rails of this track, about seventy-five feet eastward of where they were at work, and Callahan was directed by Rable, his foreman, to go and get this wrench and bolt, and he started eastward for that purpose.

Shortly before this a passenger train had come in from Cleveland, which was due in Toledo at the station at 2:10 P. M. The engine had been unhitched from the train for the purpose of taking it to the coal dock or to the round house, and it had been run west about a quarter of a mile to what is known as the Broadway bridge, and was there switched and thrown upon this east-bound main track where these men were at work, and from this point, near the Broadway bridge, was then backed eastward, starting about a quarter of a mile west of where Callahan was at work, the track being clear and straight.

Callahan, when he started after the wrench and bolt, walked down the east-bound main track between the rails; as he started to walk between the rails he looked west, he says, and saw this

locomotive, which was there, with its rear end toward him; he says it was some two or three hundred feet distant, and he thought it was standing still. Other witnesses place it as near as seventy-five or one hundred feet. He proceeded eastward along the east-bound main track, without looking further for the locomotive or making any further attempt to ascertain whether it was moving or not. When he reached the place where the wrench and bolt were, according to his testimony, he stooped over to pick them up, and just as he was in the act of stooping, with his back toward the locomotive, the rear end of the locomotive struck him, and he was thrown under the rear of the tender and dragged or propelled about one hundred and forty-seven feet, and sustained injuries; three fingers of one hand were cut off and he was otherwise injured about his person.

He claims that he heard no signal, either by bell or whistle, and did not hear the locomotive approaching, and he says he thought the locomotive was standing still when he started down the track, and that he did not know that it would start. And it is further claimed by him that it had been the custom for the foreman of such a gang to warn the men by calling out upon the approach of a train; and that he supposed, if a train approached from the rear while he was going down the track, he would be given such warning. He claims further that no such warning was given by the foreman then in charge, or, if one was given, he did not hear it.

It is also claimed that a man should have been placed upon the rear of the engine to notify men upon the track. However, this is not especially relied upon. But the grounds of negligence generally set up in the petition are that no bell was rung on this locomotive, or whistle blown; that the foreman in charge of the men did not keep a lookout for approaching trains or locomotives, and did not warn Callahan as he walked down the track; and that the engineer and foreman upon the locomotive were negligent in not keeping a proper lookout for men upon the track, and in not stopping so as to prevent injuring Callahan after they discovered he was upon the track, or might have discovered him by due care, the claim being that by the exercise of ordinary care the engineer might have discovered Callahan upon

the track in time to have stopped the locomotive and avoided injuring him.

The fireman and engineer both testified that they did not see Callahan upon the track. The testimony of the engineer is, and it seems to be uncontradicted, that it would not be possible for him to see a man on the track from the engine nearer than 135 or 140 feet from the tender, on account of the view being obstructed by portions of the locomotive. And it is not claimed here that either the fireman or the engineer saw Callahan upon the track; at least there is no evidence that they did. It is claimed, however, that, by the exercise of ordinary care they might have seen him. But it is not claimed that he was injured through any wanton or willful act of the engineer or fireman, or any reckless act; but the claim of the plaintiff is based upon the alleged negligence on the part of the engineer and fireman in not seeing him and in not giving a signal, and the failure to give warning by the foreman, as has been stated.

Any extended review of the evidence is unnecessary, on account of the special findings of the jury. The court, at the request of the railway company, submitted to the jury four interrogatories, which were answered. They are as follows, with the answers:

"1. After engine 146 came out upon the east-bound main track and began to back easterly, did it stop so backing until after it struck Callahan?" Ans. "No."

"2. Was the bell upon engine 146 ringing as it was backing east on the east-bound main track, as and when Callahan was struck?" Ans. "Yes."

"3. Did Engineer Sawyer, whilst backing his engine on the east-bound main track, and as and when Callahan was struck, exercise ordinary care in keeping a careful lookout in the direction in which his engine was backing?" Ans. "No."

"4. Before Callahan started to walk east upon or at the side of the east-bound main track could he, by the exercise of ordinary care, have observed this engine a short distance westerly of him, moving towards him upon the east-bound main track?" Ans. "Yes."

"6. After Callahan started to walk east upon or at the side of the east-bound main track, did Rable, the other section man, call out to him to 'watch out' in time and in such manner that

by the exercise of ordinary care he would have heard the warning and avoided the injury?" Ans. "No."

And upon the request of the plaintiff below, two interrogatories were submitted to the jury, which were answered. They are as follows:

"2. When Callahan started to walk east upon the track, did he exercise reasonable and ordinary care for his own safety up to the time the engine struck him, considering that it was customary to ring the bell of a coming engine and for the foreman over him to call out a warning of its approach?" Ans. "Yes."

"4. Could the engineer of the engine, by exercising reasonable and ordinary care, have stopped the engine in time to avoid injuring Callahan after he knew, or should have known of Callahan's danger by the exercise of ordinary care?" Ans. "Yes."

Counsel for the plaintiff in error claims that upon the answers to interrogatories numbered two and four, submitted by the railway company, the railway company is entitled to a judgment in its favor, notwithstanding the general verdict and also not withstanding the answers to the other interrogatories submitted by both the plaintiff below and by the defendant below.

It is claimed by the defendant in error, taking into consideration all the interrogatories which were answered by the jury, which might be said to constitute a special verdict, or that they are in the nature of a special verdict, that the judgment of the court below should be affirmed, and its action in refusing to enter judgment in favor of the railroad company should be affirmed.

Defendant's interrogatory No. 2, with the answer, has been read, but I will read it again:

"2. Was the bell upon engine 146 ringing as it was backing east on the east-bound main track, as and when Callahan was struck?" Ans. "Yes."

So, upon this special finding of the jury, which is sustained by the evidence in the case, the question as to whether the bell upon the locomotive was being rung as the locomotive approached Callahan is settled and all doubt is removed, the jury finding specially that it was rung, and Callahan must be judged and his

rights determined upon the hypothesis that the bell was in fact ringing when he started upon the track eastward and while he was walking upon the track and until he was struck by the locomotive.

Interrogatory No. 4 and the answer thereto I will read again, as this is the remaining one upon which the plaintiff in error relies

"4. Before Callahan started to walk east upon or at the side of the east-bound main track could he, by the exercise of ordinary care, have observed this engine a short distance westerly of him, moving towards him upon the east-bound main track?" Ans. "Yes."

This special finding of the jury is sustained by the evidence, and it is established then that at the time Callahan started to walk eastward upon the track, he could, by the exercise of ordinary care, have observed this engine. In fact, he testified that he did see the engine when he started east upon the track, some two or three hundred feet westward of him, but he thought it was standing still. The finding of the jury, however, is, by the answer to interrogatory No. 4, "Yes," to-wit, that "he could, by the exercise of ordinary care, have observed this engine a short distance westerly of him, moving towards him upon the east-bound main track." We understand that to mean that the jury finds that by the exercise of ordinary care he could have observed that the engine was moving toward him upon the east-bound main track when he started to walk easterly. If there is any question about that, we hold, as a matter of law, that when he saw the locomotive upon the east-bound main track not more than two or three hundred feet distant from him when he started, that it was his duty to look carefully enough to ascertain whether the locomotive was moving or standing still. When he turned his back upon this locomotive, there was imposed upon him at least the same duty that is imposed upon the traveler who is about to cross a railway track; that is, the duty of using his senses, by looking and listening to ascertain whether a train or a locomotive is approaching, and if the circumstances are such, as have been laid down by the Supreme Court of this state many times, that by looking and listening, and in the exer-

cisc of ordinary care, he might have seen or heard the train, and he is injured, on account of not seeing or hearing it, he can not recover for the reason that he must be held, as a matter of law, to be guilty of contributory negligence; and we think it is not going beyond the law to say that if a man sees a locomotive upon the track within two or three hundred feet of him, it is his duty, as a matter of law, to look carefully and ascertain whether the locomotive is moving or standing still.

Under this special finding of the jury and upon the admitted facts, it appears that when plaintiff turned eastward upon this track he saw this locomotive not more than two or three hundred feet away moving toward him, and, under finding No. 2 of the jury, that the bell upon the locomotive was ringing at the time.

It is claimed by the plaintiff in error that under this state of facts, Callahan was guilty, as a matter of law, of negligence contributing directly to his injury, at the time of his injury.

Upon the other hand it is claimed by the defendant in error that notwithstanding these facts, the railway company was liable on account of the negligence of the engineer and fireman in not observing Callahan upon the track; and that they were bound to use ordinary care to observe him, and the jury having found that the engineer might have seen him by the exercise of ordinary care, that therefore the railroad company is liable, notwithstanding the contributory negligence of Callahan; that the case, as, stated, comes within the doctrine of the "last chance," as it is called by some authorities; that is, when a party, by his own negligence, has put himself in a place of danger, the party charged with injuring him is liable if, by the exercise of ordinary care, he might have avoided injuring him after he discovered the other party was so in a place of danger, and that the party would be liable under such circumstances, if he did not exercise ordinary care, although the party injured was negligent or had been negligent in getting himself into such a place of danger.

It has been decided by the Supreme Court of this state and by other courts that, although a party has placed himself in a dangerous position, by reason of his own negligence, that he

may still recover against another person, who, having discovered his situation, does not use ordinary care to prevent injuring him, the doctrine being, that although a man, by his own negligence, has placed himself in such a position, he can not be injured with impunity; that he is still entitled to the protection of the law; and any one who discovers him in such a situation is bound to exercise ordinary care toward him. This doctrine was laid down by the Supreme Court of this state in the case of *Railway Co.* v. *Kassen,* 49 Ohio St., 230, where a man on an excursion train running along at night near Hamilton, Ohio, walked off the back end of the train and fell on the track, and on account of his injury was rendered unconscious. The train passed on without any effort to protect the man, or without stopping to pick him up, and failed to send any telegram from the next station to the following train which came along in about an hour and ran over the man and killed him. The Supreme Court held in that case that although, by his own negligence, deceased had placed himself in such a situation of peril, he was, notwithstanding that, entitled to have exercised toward him ordinary care for his protection. The court say in the first paragraph of the syllabus:

"1. It is a well settled rule of the law of negligence, that the plaintiff may recover, notwithstanding his own negligence exposed him to the risk of the injury of which he complains, if the defendant, after he became aware or ought to have become aware, of the plaintiff's danger, failed to use ordinary care to avoid injuring him, and he was thereby injured."

And the court say in the opinion, on page 239, quoting from the case of *Kerwhacker* v. *Railway Co.,* 3 Ohio St., 172:

" 'When the negligence of the defendant, in a suit upon such ground of action, is the *proximate* cause of the injury, but that of the plaintiff only *remote,* consisting of some act or omission not occurring at the time of the injury, the action is maintainable.' And such is the well settled law. The negligence of the plaintiff's intestate, in stepping or falling from a train while moving at a high rate of speed, was only the remote, and not the proximate cause of his death, the proximate cause being the omission of the defendant to use proper care, after having become aware of the danger to which his negligent act had exposed him."

But we think it is well settled that where the negligence of the party injured is continuous and is, in fact, continuing up to, during and at the very time of his injury, and if such negligence contributes directly to his injury, he can not recover on account of negligence of another.

It is needless to cite authorities to sustain the general proposition that where one's own negligence directly contributes to his injury, he can not recover on account of the negligence of another, for the law will not undertake to apportion the degree of negligence as between the parties. As was said by the Supreme Court in the case of *Schweinfurth* v. *Railway Co.,* 60 Ohio St., 215, in the second paragraph of the syllabus:

"In an action for negligence, it is not error to refuse an instruction that the defendant can not be held liable though guilty of the negligence charged, if the negligence of the person injured contributed in any degree, or in any way, to the injury of which he complains. Unless the negligence of the person injured contributed directly to, or was a proximate cause of the injury, it does not preclude a recovery."

And this proposition is discussed at length and authorities cited in the opinion. It was held that the request to charge was defective for the reason that it did not contain the language that the negligence complained of must have contributed *directly* to the injury. But if the negligence of the person injured is concurrent with the alleged negligence of the party charged with doing the injury, we hold the law to be that he can not recover, and we find no authority contrary to that doctrine.

In this case we think that the negligence of Callahan did contribute directly to his own injury, and it continued during all the time he walked upon the track, up to, during and at the very time that he was injured by the locomotive. He was bound by the law of this state and the general law of the land to keep a lookout for this locomotive, which he knew was upon the track, and which we find he knew, or by the exercise of ordinary care would have known, was approaching toward him. He therefore went upon the track and turned his back upon a locomotive approaching from behind him, with the bell ringing, and continued to walk upon the track without making any

effort whatever to ascertain how near this locomotive was approaching to him. He says he relied upon the foreman to give a warning to him, if the locomotive approached near enough to threaten him with danger.

We are of the opinion that he could not rely upon that; that the fact that it may have been the custom for the foreman to give warning by calling out did not relieve him of his duty to exercise ordinary care in looking out for the locomotive, any more than it excuses a traveler upon the highway, when he approaches a crossing, from looking and listening, because a signal by bell or whistle is not given. That has been held many times by our Supreme Court. Seeing this locomotive approaching, he knew he was in a place of danger when he was walking upon the track. He was not required to walk between the rails; he might have walked upon the other track, or at the side of the track. And there can be no question but that it was his duty to keep a constant and vigilant lookout for this locomotive approaching from behind him; and no other view would properly protect human life. Such a rule is necessary for the protection of men who are in the habit of going into dangerous places, and the law requires the exercise of such vigilance under such circumstances; and this is required also for the protection of the lives of the men operating the trains, and for the protection of passengers on the trains. The case of *Baltimore & O. Ry. Co. v. Depew*, 40 Ohio St., 121, was a case where a party had arranged with a railroad company for the transportation of himself, his family and his household goods to some western point. He was at or about the station when a train upon the railroad track started down the track; the train had been standing still. He relied upon the men operating the train giving him a warning by some signal, either by bell or whistle, when it started. They did not, and the train ran upon him and injured him. He kept no lookout for the train, to see whether it was approaching him or not. And the Supreme Court held he could not recover. They say in the syllabus:

"Where a locomotive with cars attached is standing on a railroad track near a railroad station or other place where cars are frequently moved forward or backward, a person who goes upon

the railroad track, seeing the locomotive and cars, and knowing that they would, within a few minutes, be moved toward him, and walks upon the track away from the train without watch of its movements, where there was nothing to hinder him from seeing the movements of the train in time to avoid danger, and when he could have gone in the same direction without walking on the track, is guilty of such negligence as will prevent his recovery for an injury caused by the carelessness or unskillfulness of the employes of the railroad, not amounting to willfulness on their part.

"A person so walking upon a railroad track is not free from negligence which will prevent his recovery for an injury so caused if he omits to keep watch of the movements of the train, relying upon a rule or custom of the employes of the railroad to give a signal for the moving of the train.

"The expectation that such signal would be given does not relieve a person, in such situation, from constant watchfulness for his safety."

The opinion in this case was delivered for the court by Judge McCauley. On page 127 of the opinion, the court say:

"The plaintiff knowing that the train would soon move backward, went upon the track at a station a few yards in the rear of the train, and thence walked from the train, and did not take the care to look around or in any way keep a lookout for its movements until the backing cars struck him, and this, when there was nothing to hinder him from turning around, and nothing to prevent him from plainly seeing the train if he had looked for it."

As I have said, the foreman testifies that he did call out to Callahan to warn him of the approaching locomotive. Rable testifies that he was at work upon the track, and after Callahan started to walk on the track he saw the locomotive coming along; that he stepped off the track to let it pass by and that he called out to Callahan to "watch out" or "look out," but Callahan testified that he did not hear him; and the finding of the jury in answer to one of the interrogatories submitted by the plaintiff below indicates that they found that either Rable did not call out, or that he did not call out loud enough for Callahan to hear him.

I have discussed this proposition upon the theory that Rable did not give the warning. And we are of the opinion that this

would not excuse plaintiff; that although it had been the custom to call out, and although he heard no warning given by the foreman, he could not, under the law, rely upon that to such an extent as to relieve him of the duty of keeping a lookout himself when he was walking down the track. As has been said, the testimony of Rable is that he did, in fact, call out to him, but there is a question as to whether he called out loud enough for Callahan to hear him. But the jury found that the bell was ringing as the engine approached Callahan.

Upon the question as to whether a party can recover where his negligence is concurrent with that of the party charged, a decision of the Circuit Court of Appeals of the United States, the opinion rendered by Justice Day, now of the Supreme Court of the United States, is directly in point. It is the case of *Gilbert* v. *Railway Co.*, 13 O. F. D., 475, 482. It is said in the second paragraph of the syllabus:

"The rule that where the plaintiff, in an action for personal injuries, who places himself in a dangerous position, and from which an injury is likely to result, may recover therefor if the defendant, with full knowledge or such notice as is equivalent to knowledge thereof, fails to exercise reasonable care, by which the injury may have been avoided, has no application to a case where the injury is the result of the concurrent negligence of both parties."

We think it is clear in the case at bar, if the railroad company was negligent, through the engineer and fireman, that this injury happened as the result of the concurrent negligence of both parties; that Callahan was himself guilty of negligence contributing directly to his injury, up to and at the very time that the injury occurred. He made no effort to ascertain whether this locomotive was approaching; he kept no lookout whatever while walking upon the track, or when he bent over to pick up the tools; and that therefore he was negligent during all of the time after he started to walk down the track until he was in fact injured.

After reviewing the authorities at length and citing some federal decisions, some of them decisions of the Supreme Court of the United States, Judge Day concludes:

"As we understand the rule to be deducted from these authorities, it amounts to this: That where the plaintiff, by his own negligence, has placed himself in a dangerous position, where injury is likely to result, the defendant, with knowledge, or such notice as is equivalent thereto, of the plaintiff's danger, is bound to use reasonable care and diligence to avoid injuring the plaintiff; and where, by the exercise of such care he could do so, fails to avoid the injury, this negligence introduces a new element into the case, and renders the defendant liable, because such negligence becomes the direct and proximate cause of the injury. We do not think the principle settled in these cases applies to a case where it clearly appears that the injury is the result of the concurrent negligence of the plaintiff and defendant. There is no averment in the petition that the engineer or fireman saw the decedent upon the track, or in a place of imminent danger, in time to have avoided the injury. Taking the allegations of the petition together, it seems to us to be a case of concurrent negligence on the part of the decedent and the railway company. Assuming it to be true that the defendant was guilty of the negligence charged in the petition, the deceased was guilty of negligence which directly contributed to the injury. In this view of the case, we do not think it is brought within the principle laid down in *Baltimore & O. Ry. Co.* v. *Hellenthal*, 88 Fed. Rep., 116, and similar cases. As the petition fails to disclose a cause of action in favor of the plaintiff, the demurrer was properly sustained, and the judgment of the court below is affirmed."

This was a crossing case where a man was injured while crossing the railroad track. In a very recent case in the Circuit Court of Cuyahoga County, in the opinion delivered by Judge Caldwell, he cites and reviews many authorities and decisions of our Supreme Court. This is the case of *Cleveland, C., C. & St. L. Ry. Co.* v. *Gahan,* 1 Circuit Court—New Series, 205. The second paragraph of the syllabus is as follows:

"The rule that in case of injury by negligence, where the parties are mutually in fault, the plaintiff may recover if the negligence of the defendant is the proximate cause of the injury while his own negligence is only the remote cause, consisting of some act or omission not occurring at the time of the injury, does not apply where the negligence of each party was the same in character, time and duration and equally active in causing the injury."

On page 286 of the opinion, after reviewing the authorities, Judge Caldwell says:

"The rule, as established by the courts, and in cases heretofore referred to, is in cases where the plaintiff has, at some time prior to the negligent act of the defendant, been guilty of negligence, and the rule is on the ground that the two acts of negligence did not co-operate; that the plaintiff's negligence created only a condition or circumstance upon which the defendant's negligence thereafter acted; and where that is true the defendant's negligence is the proximate cause, or, as expressed by some courts, the 'last chance.' In citing the foregoing authorities upon this proposition, it has not been the purpose to establish when the rule applies, beyond this fact, that it applies only when the plaintiff's negligence in this case was not prior to, but co-operated with, that of the defendant.

"This rule does not apply where the plaintiff may have been negligent in not looking for danger from an approaching train upon the track, when it would have been possible for him to have stepped from the track, had he thus looked. Nor will it apply where he stands so close to the track without looking for approaching danger, that he is struck by a rapidly moving train. For, in these cases, his negligence, which co-operates at the same time with the defendant's negligence, is his standing on the track without any effort to see approaching danger or without effort to move from his position, which is a continuing negligence, until he is struck. In such cases he can not complain."

In the case of *Lake Shore & M. S. Ry. Co.* v. *Schade*, 15 C. C., 424, which has been so often referred to and sometimes criticised, and which was affirmed by the Supreme Court without report, this principle of law laid down by Judge Caldwell in *Cleveland, C., C. & St. L. Ry. Co.* v. *Gahan, supra,* and laid down by the Supreme Court in the case of *Railway Co.* v. *Kassen,* 49 Ohio St., 230, was applied to the facts in *that* case, and the charge of the court to the jury was apparently based upon the theory that the negligence of the party injured might not have been concurrent with that of the other party. An abstract of the charge to the jury is found in the opinion, on pages 320, 321, as follows:

" 'One of the charges of negligence in this case is that while George Kirkhope, the deceased, was upon the track in a place of

danger from the approaching engine, the engineer or persons
in charge of this train could have seen him, and at least have
checked the speed of the engine so as to permit him to pass on
in safety. We say to you, if by the exercise of ordinary care
on the part of the engineer he could have seen the decedent,
George Kirkhope, upon the track, and the dangerous position
he was in, and by the exercise of ordinary care could have
stopped his engine in time, or checked its speed so as to have
permitted him to escape from this dangerous place, and saved
his life, it was his duty to exercise that care.'  *   *   *

"'Failure to do it would be negligence, which would permit
recovery in this case, although George Kirkhope may have been
guilty of negligence in going upon the track and being in that
position. That is, upon the rule that where a person sees an-
other in a position of danger, no matter how such person came
there, if by the exercise of ordinary care he could save such
person from injury, it is his duty to do so, and the failure to
exercise such care is negligence.' "

The question in this case was whether this proposition of law
was applicable to the facts in the case. Judge Hale dissented.
He says, in his dissenting opinion, on page 324:

"The charge as given I have no sort of disposition or desire in
any shape to criticise. Every dictate of humanity, every reason
that could be suggested, would sustain the decision rendered in
the case here cited in *Railway Co. v. Kassen,* 49 Ohio St., 230.
It was clearly right. The only doubt that remains in my mind
is whether the principles there announced should be applied to a
case of this kind."

We hold in the case at bar that the principles announced in
the case of *Railway Co. v. Kassen,* 49 Ohio St., 230, are not
applicable to the facts in this case; that here is a case of con-
current negligence, the negligence of Callahan being concurrent
with that of the railway company, if the railway company was
in fact guilty of negligence.

We do not think any case has been cited by counsel for de-
fendant in error that conflicts with the views here expressed.
The case of *Snyder v. Railway Co.,* 60 Ohio St., 487, is where a
man was working upon the track, engaged at his work of un-
loading a car, a train came along without giving any signal and
he was injured. In the case of *Lake Shore & M. S. Ry. Co. v.
Murphy,* 50 Ohio St., 135, a man was engaged in work upon

the track, bending over; a train came along, and without any signal, ran into him, and he was killed, and the Supreme Court held it was a fair question for the jury as to whether there should have been a rule requiring the railway company to have a man there to give warning of approaching trains.

In an unreported case decided by the Supreme Court on June 9, 1903 (*Lake Shore & M. S. Ry. Co.* v. *Ham*, 48 Bull., 545), men were at work upon the track at or near Pettisville, Fulton county, about four miles from Wauseon. The decedent went down the track to get some tools of some kind; he was walking on the track; a train was about a half a mile away when he started; when about 247 feet from the point he started he was struck by the train and killed. It was claimed that he was not guilty of contributory negligence because he had a right to rely upon a warning being given to him; that the foreman did not give him any warning; that he did not see the train when he started to walk upon the track. The Supreme Court held that the court of common pleas was justified in directing the jury to return a verdict in favor of the defendant and affirmed the judgment of that court and reversed this court.

It is unnecessary to discuss the answers of the jury to the interrogatories propounded on behalf of the plaintiff below. We hold that notwithstanding the fact that the jury found that the engineer and fireman could have discovered plaintiff by the exercise of ordinary care, he can not recover on account of his own contributory negligence. We hold that the answer of the jury that Callahan exercised ordinary care in walking down this track is not sustained by the evidence, and that as a matter of law he was guilty of contributory negligence in not keeping a lookout for the locomotive, as has been already stated.

We therefore hold, under these special findings of the jury, which in fact found Callahan, under the law, as we understand it, guilty of negligence which contributed directly to his own injury, negligence concurrent with that of the railway company, if it was guilty of negligence, that plaintiff can not recover. And the court of common pleas therefore erred in overruling the motion of the railway company for a judgment upon the special findings of the jury.

The judgment of the court of common pleas must be reversed and judgment entered here in favor of the railway company.

I will say further that we are of the opinion that the finding of the jury that the engineer could have discovered Callahan, by the exercise of ordinary care, is not sustained by the evidence. The evidence does not establish the fact that the engineer or fireman were negligent. There is no evidence that either one of them saw Callahan. The evidence is that the engineer could have seen Callahan when he was within 135 or 140 feet of the engine. Men were at work upon these tracks all the time, repairing the track; they remained on the track until the train was just a little way off—very near to them; and the fact that the section men were upon the track and that Callahan was ahead of the locomotive was no notice to the engineer that he would remain upon the track until the locomotive struck him. The testimony of Rable shows that he remained upon this track, although he saw this locomotive coming, he remained at work upon the track until it was very close to him, when he stepped off and let it pass by .

In view of these facts, in view of the situation and the known custom for the men to remain upon the tracks were they were at work until the locomotive was very close to them, and the fact that there is no evidence that either the fireman or engineer saw Callahan walking down the track, we are of the opinion that this finding of the jury, in answer to interrogatory No. 4 submitted by the plaintiff below, is not sustained by the evidence; that is, the affirmative answer to this question, "Could the engineer of the engine, by exercising reasonable and ordinary care, have stopped the engine in time to avoid injuring Callahan, after he knew, or should have known of Callahan's danger, by the exercise of ordinary care?" The testimony is that both the engineer and fireman were looking out of the cab window and neither saw him.

But aside from the question of negligence on the part of the railway company, we hold, for the reasons stated, that judgment should be entered upon the special findings of the jury in favor of the railway company in this court, and the judgment of the court of common pleas reversed.